## CHARLEY HANEY V. THE STATE.

No. 21869. Delivered March 11, 1942.
Appellant's Motion for Rehearing Denied (Without
Written Opinion) April 22, 1942.

The opinion states the case.

E. T. Simmang, of Giddings, for appellant.

Spurgeon E. Bell, State's Attorney, of Austin, for the State.

GRAVES, Judge.

Appellant was convicted of the offense of robbery with firearms, and by the jury given a term of eighteen years in the penitentiary.

The facts relied upon by the State show that R. A. Albers was a constable in a Fayette County justice precinct, and that he had in his possession two justice court warrants for appellant. That he drove up to the home of Price Haney, a brother of appellant, where appellant was temporarily residing, and, inquiring for appellant, made known in his presence that he came to execute these warrants. Appellant went back into the house, ostensibly for his hat, and soon returned with a Winchester rifle in his hand, and, presenting the same at Albers, forced Albers to give to appellant his pistol, and his belt and cartridges, using rather rough language towards Albers, and threatening to kill him several times. Albers begged appellant not to kill him, and finally got down on his knees in pleading for his life. Finally the parties decided to go to the home of a neighbor and see if the matter could be satisfactorily adjusted, Albers and the brother going in front, and appellant bringing up the rear with the constable's pistol in his belt and the rifle in his hand. Eventually it was decided that appellant's brother should go to town to the justice court and plead appellant guilty in one case and throw the second case out, and nothing was to be said about the pistol occurrence, or the trouble at Price Haney's house. This was done, and naught was said about the trouble for two days, at which time the constable reported such to Sheriff Loessin, who some months afterwards found appellant in Corpus Christi and arrested him, and returned him to La Grange.

At the trial Price Haney, the brother, claimed that he was the party who took the constable's pistol from him and not the appellant. However in a written statement made by Price Haney prior to this trial his testimony was entirely different on that point, evidently causing the jury to give little credence to Price's claim to have taken the pistol from Albers.

Appellant claims that the testimony is entirely insufficient in that it is shown therein that he did not intend to appropriate such pistol to his own use and benefit, but merely took same away from the constable to keep from being arrested. The court gave recognition to such proffered defense in that he submitted to the jury a requested charge of the appellant to the effect that if they thus believed or had a doubt thereof, then they should acquit appellant. There appears in the record two rather damaging statements that militated against such a theory, which was not advanced by appellant himself but by

his witnesses, appellant not having taken the witness stand. It is shown by Albers' testimony that "When the defendant, Charley Haney, took my pistol he said it was a good pistol, that he was going to leave, that he was going to take it with him, and that he could get ten or fifteen dollars for it. Price Haney told him to give it back to me." Again:

"Price Haney told the defendant, his brother, to give my gun back to me, that he, Price, would plead guilty for him, Charley and pay his fine. Charley said that he was going to take the God damn gun with him, that he could get ten or fifteen dollars for it but he would give the gun back to me provided I wouldn't report it. And I agreed to that.

"When Price Haney said something about paying Charley Haney's fine, Charley Haney said to me: 'I will pay you, God damn, on the end of this barrel.'

"When Price Haney suggested paying Charley Haney's fine, Charley Haney said, no, he was going to leave and would take the gun with him. But finally Charley Haney said that if I would not report it to the officers he would give my gun back. He said if I did report it, he would come back, slip around where I lived, and kill me.

"Price and Charley Haney asked me to agree not to report the fact about Charley holding me up if they would give my gun back to me. I was certainly afraid. I agreed not to report him if he would give my gun back. I had to agree to that because I knew he was going to kill me if I didn't comply. And that is the reason I complied. He refused to return the gun to me until I promised not to report him. I finally got my gun back."

Again the witness Alfred Weyend testified:

"Charley Haney said, talking about Albers' pistol that he had taken off of him, that he was sure lucky to get hold of a pistol that shot the same size cartridges as his rifle. 'I am going to leave before long. I am going to take this gun with me, should be able to get about 10 or 15 dollars for it.' Charley Haney said. * * *

"There was an agreement made among them not to report this affair to anybody, to keep it a secret. That is how Albers got his pistol back. He made that agreement to get the pistol back. * * *

"Price was trying to figure out a settlement to this affair. He told Charley, his brother, to give Albers' gun back to him. Charley first told him: 'I am not going to give you the gun, whatever you got coming, you get paid on the end of this barrel.' He was referring to the end of the rifle. Charley made that remark when Price promised to sell some hogs to pay him.

"I couldn't tell you whether Charley was joking or whether he meant what he said. He was pretty dry. Charley didn't laugh and he didn't cry. He was pretty dry about it."

It was shown that appellant did not take anything else from Albers other than the pistol and belt and cartridges, and he returned these after the agreement had been made not to say anything about the occurrence.

Appellant insists that the facts themselves show that he did not intend at any time to appropriate the pistol, belt and cartridges to his own use and benefit, and that therefore such facts are insufficient to predicate the verdict of guilt hereon. Unfortunately for appellant, we find the above quoted testimony contravening his theory. It may have been that one of his purposes in thus taking such property off the constable was an endeavor to prevent his arrest, but he seemed also to have allowed his cupidity the ascendance when he commented on the value of the pistol on the market, and such tended strongly to show that he had appropriated such articles to his own use and benefit. The fact that later on he was persuaded by his brother and Mr. Weyend to return such pistol in consideration of the abandonment of one charge against him and silence relative to the forcible taking of the pistol, would not change appellant's intent at the time of the original taking.

The trial court gave appellant's requested instruction No. 2, which embodied the doctrine of a mere taking of the pistol in order to prevent the constable from harming appellant or effecting his arrest, and told the jury that if they thus believed or had a doubt thereof to acquit the defendant. We think the court was correct in thus charging the jury.

There are but two bills of exceptions in the record, the first bill complaining of the argument of the assistant district attorney wherein he said: "The facts in this case show that the defendant lives by force, and if he continues so to live he will

die by force." The bill shows that upon objection the trial court promptly instructed the jury to disregard such statement. We are not prepared to say that the first portion of such statement was not correct, and surely the latter portion thereof, based as it probably was on a time worn adage, could not have seriously affected appellant's rights, especially in the light of the trial court's instruction.

Bill of exceptions No. 2 is based upon the following: While the appellant's attorneys were cross-examining constable Albers the following occurred:

"Q. You had been out there many times—you wernt watching his Winchester when you were at Weyend's house? A. I was afraid he was going to kill me any minute, all he had to do was to pull the trigger.

"Q. If you were afraid, why didn't you get Bill Loessin (sheriff) to go with you? A. I didn't know that I was going out there for a fellow who had been in the penitentiary before."

"Whereupon" the bill states, "the defendant promptly excepted to the remarks of the State witness and requested the court to withdraw same;

"That the court thereupon stated to the jury: 'The remark is withdrawn from your consideration, an improper statement of the witness, wrong on the part of the witness.' "

Nevertheless the appellant brings his bill and suggests that although the appellant did not take the stand in his own behalf, nevertheless such remark conveyed to the jury the knowledge that appellant was an ex-convict, and that such knowledge was not permissible in the case. The trial court qualifies this bill by a prior statement of witness Albers, which was allowed to remain with the jury, in which Albers, in detailing the conversation with appellant wherein the pistol was taken from the witness in which it was shown that appellant said: "G - d Fred Blundell, that s - of a b - sent me to the penitentiary and I am not going back to no G - d penitentiary." This testimony went before the jury without objection, and we think it strongly probable that the jury drew therefrom the conclusion that appellant was an ex-convict. Having failed to object to the just above quoted testimony, we think, if error, the objection came too late.

Appellant complains in his brief because the trial court refused to give a requested charge to the jury, which was in effect a charge relative to the offense of resisting an officer. We can see no reason why such charge should have been given. No such offense was set forth in the indictment. The court did apply the facts to the charge laid in the indictment and told the jury that before a conviction could be had they must believe beyond a reasonable doubt that the defendant by the use of firearms took the property of Albers from him with an intent to appropriate such property to the use and benefit of him, the appellant.

Again appellant complains because of a refused special charge relative to the testimony of Price Haney, appellant's brother, who testified that he, Price and not the appellant, was the person who took the pistol from Albers. The careful trial court did embody this defense in his charge and told the jury that if they so believed or had a doubt thereof, to acquit appellant. The trial court, so we think, was fairly liberal to the appellant in his charge; also charging on aggravated assault and simple assault, covering every phase of the case presented to him, as well as the giving of four special charges requested by appellant's attorneys. The jury were told to acquit appellant unless they believed beyond a reasonable doubt that he intended to steal Albers' property at the time such was taken from Albers, if same were so taken, and in response to such instructions they returned a verdict of guilt, with a punishment of eighteen years. While the penalty may have been severe, it was not excessive, being within that prescribed by law, and we do not feel justified in disturbing the same.

We find no error shown in the record.

The judgment is affirmed.